■ In the Matter of EVELYN B., a Child Alleged to be Abused and/or Neglected. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MELINDA E., Appellant. (And Another Related Proceeding.) [819 NYS2d 573]—

Cardona, P.J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered March 10, 2005, which, inter alia, granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate respondents' child to be neglected.

Immediately following the birth of respondents' daughter, the ninth child of respondent Melinda E. (hereinafter respondent), petitioner commenced separate proceedings alleging that the child was abused and/or neglected by respondent and the child's putative father. Following issuance of a temporary order of removal, Family Court held a hearing at which respondent, among others, testified. As is relevant here, Family Court ultimately adjudicated the newborn as derivatively neglected by respondent based upon its finding that respondent had an "extensive history" of abuse and neglect findings concerning her eight other children.[1] In fact, testimony at the hearing established that respondent's parental rights concerning her four eldest children had been terminated and her four other children were removed from her home and adjudicated neglected during the pendency of these proceedings. Following Family Court's derivative neglect determination, the child herein was placed in the care of petitioner, and respondent now appeals from Family Court's fact-finding and dispositional order.

"According 'great deference to [Family Court's] factual findings, which will only be disturbed if they lack a sound and substantial basis in the record' " (Matter of Senator NN., 11 AD3d 771, 772 [2004], quoting Matter of Nicole VV., 296 AD2d 608, 611 [2002], lv denied 98 NY2d 616 [2002] [citations omitted]), we agree with Family Court that petitioner has established derivative neglect on the part of respondent by a preponderance of the evidence. Although "proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of . . . the respondent" (Family Ct Act § 1046 [a] [i]), such evidence typically may not serve as the sole basis for a finding of neglect (see Matter of Rebecca X., 18 AD3d 896, 898 [2005], lv denied 5 NY3d 707 [2005]; Matter of Christopher O., 211 AD2d 980, 981 [1995]). However, "where

---

1. Family Court's finding of neglect as to the putative father is not a subject of this appeal.

'the nature of the direct [neglect], notably its duration [and] the circumstances surrounding its commission[,] . . . evidence[s] fundamental flaws in the respondent's understanding of the duties of parenthood,' proof of abuse or neglect of other children is alone sufficient to sustain a finding of abuse or neglect of another child" (*Matter of Tiffany AA.*, 268 AD2d 818, 820 [2000], quoting *Matter of Amanda LL.*, 195 AD2d 708, 709 [1993]; *see e.g. Matter of D'Anna KK.*, 299 AD2d 761, 763 [2002]).

In our view, this record amply establishes a longstanding pattern of neglect perpetrated by respondent upon her other children which, in turn, evidences respondent's fundamental misunderstanding of her parental responsibilities and justifies a derivative neglect finding as to her youngest child. Over the course of nearly two decades of litigation before our courts (*see e.g. Matter of Ashley E.*, 271 AD2d 764 [2000]), respondent's behavior has resulted in the removal from her home of each of her eight other children. Although respondent claims that the proceedings related to her eldest children are too remote in time to form the basis for a derivative neglect finding, the mere fact that respondent's parental rights over those children were terminated between 1988 and 1998 does not render these earlier determinations immune from our consideration. Family Ct Act § 1046 (a) (i) does not limit the admissibility of prior findings to only those of a particular vintage, and our courts have not established a bright-line, temporal rule beyond which we will not consider older child protective determinations (*see e.g. Matter of Justice T.*, 305 AD2d 1076, 1076 [2003], *lv denied* 100 NY2d 512 [2003]; *Matter of Colleen A.S.*, 242 AD2d 877, 878 [1997]; *see generally Matter of Charles DD.*, 163 AD2d 744, 746-747 [1990]). Indeed, in a case such as this involving many children who were all neglected at a young age, the neglect determinations concerning the eldest children would necessarily long predate those concerning the youngest. Accordingly, while the passage of time between an isolated incidence of direct neglect and the purported derivative neglect might, in some cases, prove to be a dispositive factor (*see e.g. Matter of Natasha RR.*, 27 AD3d 788, 789 [2006]), where, as here, the circumstances of the case evince a continuing pattern over the course of many years, we cannot conclude that only the most recent instances of neglect are germane to the discussion.

Moreover, the record establishes that a common factual predicate underlying each of the prior proceedings was respondent's inability to establish an acceptable home environment for her children. Another persistent issue has been respondent's

unwillingness to cooperate with child protective agencies and abide by the service plans put into place to facilitate respondent's reunification with her children. Significantly, these recurrent issues continue to be apparent in the two most recent proceedings concerning respondent's fifth, sixth, seventh and eighth children. The first such proceeding, in 2001, resulted in a determination of neglect upon the ground that respondent's home was "extremely filthy," "layered in garbage" and "infested with cockroaches." Although that proceeding was "adjourned in contemplation of dismissal" for a period of one year upon agreement of the parties (*see* Family Ct Act § 1039), respondent was nonetheless required to abide by numerous conditions pursuant to Family Court's order (*see* Family Ct Act § 1039 [c]; *see also* Family Ct Act § 1053 [a]; 22 NYCRR 205.83 [a]). Our review of the record leads us to the conclusion that respondent did not comply with these conditions. In fact, the second proceeding concerning respondent's four youngest children (hereinafter the 2004 proceeding) involved, among other allegations, a claim that petitioner's staff routinely advised respondent that her home was filthy and unsafe and that, as a result, respondent would "minimally improve" the condition of her home, only to thereafter permit it to return to its unsafe condition.[2]

We further note that the 2004 proceeding also contained allegations that respondent permitted a paramour's brother, who respondent knew to be a sex offender, to have unsupervised access to respondent's children. In fact, the brother is alleged to have sexually abused one of respondent's daughters during this time frame. Although respondent no longer resides in proximity to the brother, this fact, alone, does not militate against a finding of derivative neglect. On the contrary, respondent's knowing acquiescence to these perilous conditions evidences her "flawed understanding of [the] parental duty to protect children from harm so as to create a substantial risk of harm for any child in . . . her care" (*Matter of Melissa L.*, 276 AD2d 856, 857 [2000], *lv denied* 96 NY2d 702 [2001]; *see* Family Ct Act § 1012 [f] [i] [B]; *Matter of Paul P.*, 306 AD2d 653, 653-654 [2003]; *Matter of*

---

2. To the extent that respondent contends that the petition in the 2004 proceeding was improperly admitted into evidence, it should be noted that this document was affixed to the petition in this matter and was, thus, presumably available for inspection by respondent and her counsel in advance of the hearing (*see Matter of Melanie Ruth JJ.*, 76 AD2d 1008, 1009-1010 [1980], *lv denied* 51 NY2d 710 [1980]; *Matter of Lisa Ann U.*, 75 AD2d 944, 945 [1980], *revd on other grounds* 52 NY2d 1055 [1981]). Moreover, the relevant information contained in said document was largely recounted by witnesses during the hearing before Family Court.

*Mary S.*, 279 AD2d 896, 897 [2001]). Her relocation does not undermine such a conclusion absent proof that the move was motivated by a desire to protect her children.

Accordingly, inasmuch as the paramount purpose of Family Ct Act article 10 is the protection of the "physical, mental, and emotional well-being" of children (Family Ct Act § 1011; *see Matter of Charles DD.*, 163 AD2d 744, 747 [1990], *supra*), and mindful of the particular vulnerability attendant to newborn infants such as the child herein (*see generally Matter of Kimberly H.*, 242 AD2d 35, 38-40 [1998]), we conclude that Family Court's finding of derivative neglect is justified on this record.

Mercure, Crew III and Peters, JJ., concur.

Mugglin, J. (dissenting). I respectfully dissent only because, in my view, petitioner failed to submit sufficient admissible proof to establish that respondent Melinda E. (hereinafter respondent) derivatively neglected this child. Previous neglect of children does not establish a prima facie case of derivative neglect of the current child without additional proof that the previous conditions of neglect are proximate in time so that "it can reasonably be concluded that the condition still exists" (*Matter of D'Anna KK.*, 299 AD2d 761, 763 [2002] [internal quotation marks and citations omitted]). I would hold that the Tioga County proceedings between 1988 and 1998 are too remote in time to support the conclusion that those conditions of neglect still exist. While the two Broome County neglect proceedings are not as remote, the 2002 petition was adjourned in contemplation of dismissal and the 2004 petition and resulting order were improperly received in evidence, over objection, as neither was properly authenticated or certified (*see generally* CPLR 4518). Moreover, even if admissible, the primary conditions of neglect alleged were that respondent maintained an unclean home and that she permitted the four children to visit with their father in his house, across the street from respondent's, despite the presence in that household of the father's brother, a child sex offender, who, in fact, sexually abused one of the children. As respondent now resides in Clinton County, with the father of her ninth child and his parents, it cannot reasonably be concluded that the conditions of neglect still exist. Hence, petitioner has not proven derivative neglect by a preponderance of the evidence.

Ordered that the order is affirmed, without costs.